890 So.2d 56 (2003)
In the Matter of the Petition for REINSTATEMENT to the Practice of Law OF Gerald Keats BALDWIN, Jr.
No. 2003-BR-00043-SCT.
Supreme Court of Mississippi.
September 25, 2003.
*57 Gerald Keats Baldwin, Jr., pro se.
Michael B. Martz, attorney for respondent.
EN BANC.
McRAE, Presiding Justice, for the Court.
¶ 1. Gerald Keats Baldwin, Jr., petitions the Court for reinstatement to the practice of law following his disbarment in December of 1999 for felony possession of cocaine. Miss. Bar v. Baldwin, 752 So.2d 996 (Miss.1999). The Mississippi Bar opposes Baldwin's reinstatement, arguing that he has not provided clear and convincing evidence of his rehabilitation nor demonstrated a firm resolve to live a correct life. We agree with the Bar and deny his petition.

FACTS
¶ 2. This Court disbarred Gerald K. Baldwin, Jr.; a/k/a "Jerry Baldwin" (hereafter "Baldwin") on December 16, 1999, following his guilty plea in the Circuit Court of the First Judicial District of Hinds County, Mississippi, to a felony charge of cocaine possession. Miss. Bar v. Baldwin, 752 So.2d 996 (Miss.1999). Pursuant to Miss.Code Ann. § 41-29-150(d)(1) (1993), Baldwin was sentenced to one year under the supervision of the Mississippi Department of Corrections ("MDOC"), fined $3,000, and assessed all costs. The court also ordered that he attend an alcohol and drug treatment program as directed by the MDOC.
¶ 3. Pursuant to the provisions of Rule 12 of the Mississippi Rules of Discipline, Baldwin was required to wait three years from the date of his disbarment before becoming eligible to petition for reinstatement. Accordingly, Baldwin filed his petition in January, 2003 and was deposed by the Bar as part of the reinstatement process.
¶ 4. In his petition, Baldwin alleges that (1) no one suffered pecuniary loss as a result of his cocaine possession and that he paid the Bar all costs associated with this action; (2) he satisfactorily completed the one-year probation, having met monthly with his assigned probation officer and having paid all associated fines and fees; (3) he successfully completed a three-month drug and alcohol addiction program through COPAC[1]; (4) he has participated in various community and volunteer services, made financial contributions to the Special Olympics, the National Guard and police publications, and is a member of Pine Lake Baptist Church; (5) he has been employed by and is presently the managing partner of a medical supply company; and (6) he has kept abreast of Mississippi statutes and case law.
*58 ¶ 5. Baldwin also informs this Court that he complied with all orders of this Court dated on the date of his disbarment; that, in addition to having completed COPAC, he attended the Judges and Lawyers Assistance Program Meetings as well as AA meetings as recommended; that he is remorseful for the "terrible mistake" he made and the "embarrassment" he caused to his family and that he desires to "try and regain his children's respect as well as the respect of his friends and associates" in the Bar; that he is rehabilitated; and that his future plans are to practice law in Madison County if reinstated. Attached to Baldwin's petition are reinstatement recommendations of eight members of the Mississippi Bar.
¶ 6. Additionally, during Baldwin's deposition, the Bar requested documentary proof that he paid his fine and completed drug treatment. While Baldwin did not have that documentation, he advised this Court that he would be providing said proof. On April 29, Baldwin filed a copy of the circuit court order of dismissal discharging him from his probation based upon full payment of his fine and completion of drug treatment. However, no medical records were submitted to this Court to indicate that indeed Baldwin had completed drug treatment.

DISCUSSION
¶ 7. This Court has exclusive and inherent jurisdiction of matters pertaining to attorney reinstatement. Rules of Discipline for Miss. State Bar 1(a); Miss. Bar v. Sweeney, 849 So.2d 884, 887 (Miss.2003). We review petitions for reinstatement de novo. In re Parsons, 849 So.2d 852, 854 (Miss.2002). We also sit as trier of fact and therefore are not bound by substantial evidence or manifest error rules. Id.
¶ 8. Rule 12 of the Rules of Discipline governs reinstatement of disbarred attorneys. Rules of Discipline for Miss. State Bar 12; In re McGuire, 849 So.2d 880, 881 (Miss.2003). Specifically, reinstatement is contingent upon satisfaction of the following requirements: The petitioner must (1) include a list of names and addresses of persons, parties, firms, or legal entities who suffered pecuniary loss due to the attorney's misconduct; (2) show that he has made full amends and restitution or provide a statement to the effect that full amends and restitution is not appropriate or has been imposed; (3) that he has the requisite moral character to be reinstated; and (4) that he has the requisite legal learning to be reinstated to the privilege of practicing law. Id. (citing Miss. R. Discipline 12.7); In re Morrison, 819 So.2d 1181, 1183-84 (Miss.2001); In re Smith, 758 So.2d 396, 398 (Miss.1999); Burgin v. Miss. State Bar, 453 So.2d 689, 691 (Miss.1984).
¶ 9. While Baldwin must satisfy these enumerated requirements, this Court has consistently held that "the fundamental question to be addressed before reinstatement is the attorney's rehabilitation in conduct and character since the disbarment." In re McGuire, 849 So.2d at 881 (citing Burgin, 453 So.2d at 691) (citing Miss. State Bar Ass'n v. Wade, 250 Miss. 625, 167 So.2d 648 (1964)). "The burden of proving that he has rehabilitated himself and re-established the requisite moral character sufficient to entitle him to reinstatement is upon the Petitioner." Id. (citations omitted). Finally, as this Court recently reiterated:
A court in such a proceeding is not administering punishment; it is passing upon character. We do not believe it requires a long period to discipline and effect a rehabilitation of character. A firm resolve to live a correct life evidenced by outward manifestations sufficient to convince a reasonable mind *59 clearly that the person has reformed is only required. In restoring a disbarred attorney, the principal question is whether that particular attorney would be safe to assist in administering justice, if readmitted; and the effect of his readmission upon the conduct of others, while important, is a subsidiary consideration. A man who has redeemed himself and become worthy to be readmitted should not be kept out of the profession to which, perhaps, he has devoted much of his life and means, because others might, possibly, be led to do evil.
Id. (quoting Ex parte Marshall, 165 Miss. 523, 556, 147 So. 791, 798 (1933)). See also Miss. State Bar v. Gautier, 538 So.2d 772, 775 (Miss.1989).

I. BALDWIN'S REHABILITATION AND FULFILMENT OF THE ENUMERATED REQUIREMENTS OF RULE 12.

A. PECUNIARY LOSS.
¶ 10. No one suffered pecuniary loss as a result of Baldwin's cocaine possession. However, Baldwin was ordered to pay a $3,000 fine, which was fully paid. Consequently, an order of dismissal was granted upon conclusion of his probationary period.

B. FULL AMENDS.
¶ 11. Baldwin has paid the Bar all costs associated with this action as well as the required investigatory fee. The costs and expenses were $123.65, the investigatory fee $500.

C. REQUISITE MORAL CHARACTER.
¶ 12. As part of the reinstatement investigation, Baldwin was deposed by the Bar on January 23, 2003. The following subjects were considered concerning Baldwin's moral character.

a. DRUG TREATMENT.
¶ 13. Baldwin alleges that he participated in and completed a three-month outpatient drug treatment program at COPAC. Baldwin testified that the program required participation three nights per week, for three hours each night, for three months. He also testified that he was tested for drug use as part of the program, as well as by the MDOC as part of his probation and that he passed each drug screen. When Baldwin was called upon to provide this Court with documentation of his drug treatment, he submitted the circuit court's order dismissing him from probation. However, this order did not specify what exact treatment Baldwin had received or what facilities administered treatment. He did not submit any medical documentation from any facility showing the negative drug test results, the completion of any drug programs, doctor's reports or letters of recommendation regarding his progress, or the names of any employees or other members of any of the treatment facilities or programs. Without the appropriate documentation, we cannot say that Baldwin has indeed become a "moral" member of society.

b. CIVIC, CHURCH, AND CHARITABLE INVOLVEMENT.
¶ 14. Baldwin testified that since his disbarment he has participated in many community activities including the youth baseball leagues of Madison County, coaching a girls soccer team, promotion of the Special Olympics and Northwest Rankin High School football, as well as contributing to the National Guard and various police publications.
¶ 15. In general, Baldwin testified that he has been and is presently focused on his children's lives and engages in many of their activities. Baldwin's participation in the baseball leagues consisted of financial *60 sponsorship and game attendance. In addition, he provided breakfast every Friday morning to the football players of Northwest Rankin during football season and testified that he mentored a sophomore running back there. Baldwin also made financial contributions to the Special Olympics of Natchez and various police publications.
¶ 16. Baldwin has been employed by MAGMED, Inc., since February of 2000. He is a managing partner and 50% owner. MAGMED is a medical supply company providing goods such as wheelchairs, crutches, braces, and incontinence devices.
¶ 17. Baldwin testified that, at the encouragement of his son and in order to participate more meaningfully in his son's life, he attends and has been attending Pine Lake Baptist Church in Brandon with his son for almost two years now.
¶ 18. Most of Baldwin's involvement in these activities has consisted of financial donations, save the coaching of the girls soccer team and his church affiliation. In fact, in his deposition testimony Baldwin admitted that his involvement in these activities was mainly limited to financial donations made by MAGMED, his company.

c. PERSONAL RECOMMENDATIONS.
¶ 19. Baldwin has provided eight letters of recommendation with his petition. Each is from a Mississippi attorney in good standing. These letters collectively express knowledge of Baldwin's personal difficulties at the time of disbarment and indicate that Baldwin is an honest man who has taken steps to correct his mistakes and rehabilitate himself. One recommendation states that Baldwin's "strongest trait, the one thing that ensures he has characteristics needed in the profession, is that he is a good father."
¶ 20. The recommendations consistently express that while a member of the Bar, Baldwin represented his clients with diligence, that his "clients have always had the highest praise for him," and that Baldwin in every instance "handled himself with the utmost professionalism." Interestingly enough, at least two of the letters were from attorneys who share office space with Baldwin. This will be discussed later in this opinion.

d. MENTAL AND EMOTIONAL STATUS.
¶ 21. The Bar indicates in its answer that Baldwin appeared to be mentally and emotionally stable during the course of his deposition, that Baldwin was not suffering from any medical problems, and that he was not taking any medication other than that for a sinus infection. The Bar indicated, however, that Baldwin's memory about certain matters appeared hazy and confused. Having examined Baldwin's deposition, we observe that indeed at times Baldwin could not remember names or last names of persons involved in his adjudication, probation, or treatment over three years ago.

e. FUTURE PLANS.
¶ 22. If reinstated, Baldwin intends to return to law practice in Madison County. He indicated in his petition that he missed practice and desired to continue to help the citizens of this state as an attorney.

D. REQUISITE LEGAL LEARNING.
¶ 23. During his disbarment, Baldwin indicates that he read various statutes and cases concerning business law, collections, U.C.C. filings, corporations, criminal and domestic relations law. He also claims to have kept up with the opinions of this Court. Baldwin is also aware that if he is to be reinstated, reinstatement is contingent upon retaking and passing the Mississippi Bar and the Multi-State Professional *61 Responsibility Exams. See Miss. R. Discipline 12.5.

II. THE IMPACT OF BALDWIN'S APPARENT CONTINUED PARTICIPATION IN THE PRACTICE OF LAW.
¶ 24. An additional issue remains concerning Baldwin's apparent continued participation in the practice of law since his disbarment. After reading the deposition testimony of Baldwin and putting the "big picture" together, it has come to light that Baldwin is either practicing law, participating in the practice of law, or placing himself in such a position that he gives the "appearance" of practicing law. None of this works in his favor on this petition.
¶ 25. The following facts make this issue impossible to ignore:
(1) "Gerald Baldwin" also goes by the name of "Jerry Baldwin;"[2]
(2) Baldwin's attorney office address before being disbarred has not changed and he still receives mail at that address;
(3) Baldwin's partner in MAGMED, is also an attorney. Her attorney office address is exactly the same as Baldwin's before disbarment and now;
(4) Baldwin's attorney office telephone number before his disbarment is still listed on page 81 of the yellow pages section designated "Attorneys" of the 2003 BellSouth Telephone Book for the Greater Jackson Area under the name of attorney "Jerry Baldwin;"
(5) "Jerry Baldwin's" law office phone number is also used as the law office number for Baldwin's current partner in MAGMED;
(6) When Michael B. Martz, the Mississippi Bar General Counsel, called Baldwin's MAGMED partner's law office before the taking of depositions, he was more than surprised to find Baldwin answering the phone for the law office;
(7) At least three attorneys use 607 Hwy 51 Ridgeland, Mississippi as their address for their law offices and use the same receptionist; and
(8) Two of the attorneys using the same law office address wrote letters of recommendation for Baldwin.
¶ 26. These facts amount to more than "suspicion." Baldwin still holds himself out as an attorney and has continued to get mail and list his telephone number in his capacity as an attorney. Furthermore, the additional facts listed above create at the very least the "appearance" of practicing law.
¶ 27. Recently, this Court refused to grant a petition for reinstatement after concluding that the disbarred attorney continued to maintain an office in his old law office building which "at a minimum, [created] the appearance of the practice of law in contravention of our order of disbarment." In re Parsons, 2003 WL 21982905 at *4 (¶ 18), 890 So.2d 40, 44 (Miss.2003). Under the circumstances, Baldwin did more than just create the "appearance" of practicing law. He appears to even hold himself out to the public as an attorney.
¶ 28. Despite all of Baldwin's contentions and heartfelt arguments about his recovery, we still must agree with the Mississippi *62 Bar regarding denial of reinstatement.

CONCLUSION
¶ 29. After having reviewed the record and deposition testimony of Baldwin, we cannot say that the evidence presented supports a finding for reinstatement. Reinstatement is not proper as Baldwin has not shown himself to be of the requisite moral character, to have completed drug treatment, or to be have stable mental or emotional health. In fact, Baldwin's apparent continued practice of law since his disbarment and the fact that he continues to hold himself out to the public as an attorney, would alone be enough under the circumstances to deny reinstatement. Accordingly, we hereby deny the petition of Gerald Keats Baldwin, Jr., for reinstatement to practice law. We further find that the Mississippi Bar should conduct further investigation into whether Baldwin has practiced law without a license. Baldwin may not file another petition for reinstatement until one year after the date of this decision. Miss. R. Discipline 12.6.
¶ 30. PETITION FOR REINSTATEMENT DENIED.
SMITH, P.J., WALLER, COBB, EASLEY AND CARLSON, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. PITTMAN, C.J., AND DIAZ, J., NOT PARTICIPATING.
NOTES
[1] COPAC, the "Conducive Out-Patient Addiction Center" is a nationally recognized residential extended care facility for the treatment of chemically dependent adults. It offers several programs, including a three-month outpatient program, which Baldwin testified he successfully completed. COPAC is accredited by the Joint Commission for Accreditation of Health Care Organizations (JCAHO), and is certified by the Mississippi Department of Mental Health.
[2] This is not an assumption by this Court, but rather a documented fact as Baldwin's own Motion to Present Documentation before this Court specifically states "COMES NOW, Gerald Keats Baldwin, Jr., (Jerry)."